## Antonio L. Crout *vs.* James F. DeWolf.

Where a person, whose signature is forged to a promissory note, upon being asked by one, who afterwards purchases it, if he shall purchase, and tells him that he may, or where after purchase, when the note falls due, he promises to settle it, he cannot afterwards excuse himself from paying it on the ground that it is a forgery.

If a person, whose signature is forged, treats the forged notes as valid, and thereby leads the community to believe that the forger has authority to draw notes in his name, he will be bound to pay similar notes, purchased by one who is deceived by his conduct.

Where the person, whose signature is forged, promises the forger to pay the note, this amounts to a ratification of the signature, and binds him.

An action on a promissory note for $165, dated May 17, and made payable to George G. Monroe, or order, signed James F. DeWolf, and endorsed by Monroe to the plaintiff. The defence was, that the note was a forgery. The plaintiff put in evidence of the genuineness of the signature. It also appeared, that after the note was offered to the plaintiff, and before the purchase, the defendant was asked by the plaintiff if he should purchase the note, and was told that he might if he chose. But the note was not exhibited to the defendant, nor did it appear that it was particularly described. When the note became due, notice was sent to the defendant, who said he would call down and settle it; but it did not appear that the notice was so specific as to apprise the defendant that the note was this note. It was also shown that in the Fall of 1846, a note, signed, payable and endorsed like the present, had been left at the Commercial Bank, of Bristol, for collection; which, when shown to

Antonio L. Crout vs. James F. DeWolf.

the defendant, had been declared to be a forgery, but that afterwards the defendant had taken up the note. Another note of the same character, purporting to have been given in April, 1847, and endorsed to Edward Dexter, had been left at the Merchants Bank, and shown to the defendant by the cashier, and handed back by the defendant, with the remark that he would call again. The note not being taken up at its maturity by the defendant, was taken up by Dexter, who afterwards went to the defendant and stated to him that he had his note, which had been protested at the Merchants Bank, but did not show him the note. The defendant said he was then going to New-York and would attend to it when he returned. This the defendant did not do, but, when the note was put in suit, contested it as a forgery. It appeared that Monroe had been in the employ of the defendant for three or four years, to the amount of four or five hundred dollars a year.

The brother of Monroe testified that in the Fall of 1847, the defendant promised Monroe that he would pay these notes. That at this time Monroe was possessed of property. Monroe left the State in March, 1848.

On the other hand, evidence was introduced to show that the note was a forgery ; that the note at the Commercial Bank had been taken up through the influence of Monroe and his friends, to shield him from prosecution ; that the Dexter note not only was not shown, but that Dexter refused to show it, and that under these circumstances he said he would attend to it when he returned from New-York.

BLAKE for plaintiff.

POTTER for defendant.

Antonio L. Crout *vs.* James F. DeWolf.

GREENE, Chief Justice, charged the Jury.

This action is on a promissory note for $165, dated May 17, 1847, made payable to George G. Monroe or order, four months after date, and purporting to be signed by James F. DeWolf. It was endorsed to the plaintiff by Monroe, and on the twentieth of September, 1847, appears to have been noted for non-payment. The first question is, whether the signature is genuine ? This is a mere question of evidence. The defendant has a perfect right to deny it ; the fact that the note is negotiable should not weigh with you at all ; every party takes such paper at his own risk ; and when he comes to the party, whose name is signed to it, for payment, it is for him to prove that the signature is genuine. If you find the defendant signed it, that ends the case. You must bring in a verdict for the plaintiff. But if not, then you come to the other ground upon which the plaintiff claims to recover ; that is, that the defendant's conduct has been such as to ratify or give to this signature the effect of a genuine signature. If, before purchasing this note, the plaintiff informed DeWolf that the note had been offered to him and asked if he should buy it, and was told that he might—DeWolf knowing at the time that it was this identical note—he cannot now excuse himself from paying it, on the ground that it was a forgery. Evidence has also been introduced that when the note fell due, notice was sent to DeWolf, and that he promised to settle it. If the notice brought home to the defendant the knowledge that this specific note was due, and with this knowledge the defendant promised to pay, he is bound by his promise. But if it was merely a notice that some note was due—without identifying it—he is

Antonio L. Crout *vs.* James F. DeWolf.

not bound. You must judge of the force of the evidence upon this point.

Evidence has been put in, in regard to two notes—the Dexter note and the note at the Commercial Bank—to show an authority in Monroe to draw notes in the defendant's name. If DeWolf had permitted them to be drawn in this way and had paid them as valid notes, this would be proper evidence for you to consider of such an authority conferred upon Monroe. It is in proof that when DeWolf's attention was called to the note at the Commercial Bank, he stated that the signature was not genuine ; but subsequently, by the advice of a friend, he decided to take the note up, and that when he went to pay it, the cashier said to him, " so you have concluded to take this up?" to which he made no reply. The motive, it is said, was to screen Monroe from prosecution. If this was his motive, and not to enable Monroe to issue subsequent notes and to deceive the public, and if the plaintiff was not deceived by it, then no inference of ratification or authority could be drawn from the transaction. And it has no bearing on this case. In regard to the Dexter note, if DeWolf, knowing it to be a forgery, had voluntarily paid it, that, taken in connection with other things, might go to prove an authority. If it was paid upon suit, it is no evidence of authority. Or, in his interview with Dexter, his promise to pay, if given after seeing the note, might go to show an authority ; but if the note was not produced, it was not such a recognition of authority as would bind him. So with his conduct at the Merchants Bank. It is proved, when the note was shown him by the clerk, he handed it back saying, " he would call again." In order to infer a general authority,

something more than this is requisite. Evidence has also been introduced, to show that DeWolf promised Monroe to pay this note. If this is so, it amounts to a ratification of the signature and binds him, although Monroe had no authority when he signed the note.

Verdict for the plaintiff.